UNITED STATES of America,
Plaintiff-Appellee,

v.

Kent Borden ROGERS,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Jacob N. PEILTE, Defendant-Appellant.

Nos. 82–1286, 82–1287.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1983.
Decided Dec. 28, 1983.

Percy Anderson, Los Angeles, Cal., for plaintiff-appellee.

Norman D. James, Los Angeles, Cal., Jacob N. Peilte, Santa Ana, Cal., for defendant-appellant.

Before CHAMBERS, ANDERSON and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Kent B. Rogers and Jacob N. Peilte appeal convictions for substantive bankruptcy fraud and conspiracy to commit bankruptcy fraud. They allege the use of evidence based on immunized testimony, improper joinder in the indictment, prejudice caused by pre-indictment delay, and insufficient evidence to support their convictions. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of appellants' activities in connection with the bankruptcy of Global Western Development Corporation (Global). Rogers was president and majority shareholder of Global and Peilte was his attorney. In 1973 Global entered into a joint venture with another company to develop a residential housing project in Riverside, California. In a second unrelated transaction, Global purchased a ranch in Orange County in 1975. In 1976 the construction lender on the housing project foreclosed on its loan to Global. On October 4, 1976, the day before the foreclosure sale, Rogers and Peilte filed for bankruptcy under Chapter XI on behalf of Global. Two hours before this filing Rogers transferred the ownership of the ranch from Global to another corporation he owned.

In 1977 the bankruptcy court discovered the circumstances of the transfer of the ranch and promptly appointed a receiver in bankruptcy for Global. The receiver procured a written stipulation from Rogers voiding the transfer. Upon a more complete audit of the bankrupt the receiver found evidence that Rogers and Peilte had on several occasions converted Global funds to their personal accounts. Peilte later denied such actions in sworn testimony before the bankruptcy court.

In 1978 the receiver requested that Rogers and Peilte provide him with all records pertaining to Global's financial affairs. Rogers and Peilte assured the receiver that no records had been withheld. A few months later, however, Global's former landlord found several file cabinets of Global's records in an office once occupied by

Global and turned them over to the receiver.

In September 1981, a federal grand jury indicted Rogers and Peilte for conspiracy to commit bankruptcy fraud and numerous counts of substantive bankruptcy fraud. In February 1982 the district court convicted Rogers of one count of conspiracy in violation of 18 U.S.C. § 371 (1976) and four counts of fraud in violation of 18 U.S.C. § 152 (1976), including concealment of real property, fraudulent receipt of money, and withholding documents and records from a trustee. Peilte was convicted of one count of conspiracy and five counts of fraud, including concealment of property, fraudulent receipt of money, and perjury. Rogers and Peilte were both sentenced to five years concurrent imprisonment on each count, suspended on conditions of brief jail confinement, probation for five years, community service, and fines.

Appellants raise four issues on appeal. They argue that (1) the trial court erred in refusing to dismiss the charges against Rogers, because the government did not carry its burden of proving that it did not use evidence based on immunized testimony he gave before the bankruptcy court; (2) Peilte was deprived of a fair trial because he and Rogers were improperly joined in the same indictment; (3) the indictments should have been dismissed because of pre-indictment delay; and (4) the evidence was insufficient to support their convictions.

## DISCUSSION

I. *Evidence Based on Immunized Testimony*

Section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10) (1976),[1] provides use

---

1. 11 U.S.C. § 25(a)(10) of the Bankruptcy Act was replaced by 11 U.S.C. § 344 of the Bankruptcy Code when the Code replaced the Act in 1978. § 344 incorporates the general immunity provisions of 18 U.S.C. § 6001 *et seq.* into bankruptcy proceedings. The bankruptcy petition in the present case was filed on October 4, 1976. Section 403 of Pub.L. 95–598, Title IV, Nov. 6, 1978, 92 Stat. 2683 provided that all cases commenced under the prior Act would be governed by its provisions.

Accordingly, § 25(a)(10) of the Act states in relevant part:

"The bankrupt shall ... (10) at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealing with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administra-

and derivative use immunity in a subsequent criminal case for testimony given by a bankrupt during certain bankruptcy proceedings which concern the circumstances of the failed business. This provision applies to Rogers' bankruptcy testimony because he was the officer who acted on behalf of Global at the bankruptcy proceedings. *See United States v. Coyne,* 587 F.2d 111 (2d Cir.1978).

■ Grants of use and derivative use immunity prohibit the use of compelled testimony and evidence derived therefrom in later criminal proceedings. *Kastigar v. United States,* 406 U.S. 441, 443, 92 S.Ct. 1653, 1655, 32 L.Ed.2d 212 (1972). The scope of such immunity is coextensive with the privilege against self-incrimination afforded by the Fifth Amendment. *Id.* at 459, 92 S.Ct. at 1664. A grant of immunity casts on the government the burden of showing that the evidence it intends to present in a subsequent criminal prosecution is derived from a source independent of immunized testimony. *United States v. Weiner,* 578 F.2d 757, 774 (9th Cir.1978), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). The government's burden of proof under *Kastigar* may be met by a preponderance of the evidence. *See United States v. Romano,* 583 F.2d 1, 7 (1st Cir.1978); *United States v. Seiffert,* 501 F.2d 974, 982 (5th Cir.1974).

Before his criminal trial Rogers moved to require the government to satisfy its burden under *Kastigar,* and the district court found that the government's evidence was not tainted by Rogers' bankruptcy testimony. This finding must be upheld unless clearly erroneous. *See United States v. Provenzano,* 620 F.2d 985, 1005 (3d Cir. 1980), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Romano,* 583 F.2d 1, 7 (1st Cir.1978).

■ Rogers claims that the government's showing fails at three points. First, Rogers insists that the lower court improperly placed on him the burden of proving that the prosecutor's evidence came from an immunized source. At the pre-trial hearing the government filed sworn declarations by prosecutors, investigators and witnesses that both denied access to Rogers' bankruptcy testimony and affirmatively specified the independent sources of evidence upon which the government actually relied. In light of this exhaustive filing, Rogers' claim is untenable. *See Weiner, supra,* 578 F.2d at 774–75.

■ Second, Rogers contends that the attorney for the trustee, Mr. McDonnell, who was present during the bankruptcy proceedings, testified at the criminal trial on matters he could have learned only by listening to Rogers' immunized testimony. This contention is likewise without merit. The subject of McDonnell's testimony concerned Global's fraudulent transfer of the ranch to another company owned by Rogers just before Global filed for bankruptcy. McDonnell, acting on behalf of the trustee, had talked on the phone and had met with Rogers and Peilte in October 1977 to discuss the circumstances of the transfer and to request reconveyance of the ranch to Global. It is clear that McDonnell's testimony about the actions of Rogers and Peilte was based on information McDonnell learned in these negotiations rather than on Rogers' bankruptcy testimony.

■ Third, Rogers argues that Count Eleven of the indictment, which charged him with concealing records, is tainted. He alleges tainted grand jury testimony by the trustee, who testified that Rogers had stated in a prior court proceeding that he had additional records of Global and would deliver them to the trustee. While this statement by the receiver before the grand jury was improper, it was harmless in light of the more than adequate untainted evidence to support the indictment. *See United States v. Shelton,* 669 F.2d 446, 464 (7th Cir.1982), *cert. denied,* 456 U.S. 934, 102

---

tion and settlement of his estate or the granting of his discharge; but no testimony, or evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge ....

S.Ct. 1989, 72 L.Ed.2d 454 (1982). The record adequately supports the conclusion that the basis for Count Eleven was information received from Rogers' former landlord advising the trustee of several abandoned Global file cabinets.[2]

## II. *Improper Joinder*

Rule 8(b) of the Federal Rules of Criminal Procedure sets forth the standard governing the joinder of defendants:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

We have noted that because this rule embodies a substantial public interest in efficient use of judicial resources, joint trials are the rule rather than the exception. *United States v. Brashier,* 548 F.2d 1315, 1324 (9th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977). The burden rests on the appellant to show that the joint trial was "manifestly prejudicial," *United States v. Cruz,* 536 F.2d 1264, 1267–68 (9th Cir.1976), and that the lower court abused its discretion by failing to sever. *United States v. Kennedy,* 564 F.2d 1329, 1334 (9th Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). Peilte has made no such showing here. On the contrary, he and Rogers were accused of working together in a common plan to make a fraudulent transfer of the ranch out of Global, to convert Global funds to themselves, and to conceal their acts from the bankruptcy court. While the conspiracy count alone may not justify their joinder, *Metheany v. United States,* 365 F.2d 90, 94 n. 4 (9th Cir.1966), the combination of the conspiracy and joint offenses involved in the substantive counts were certainly sufficient to do so. *See, e.g., United States v. Patterson,* 455 F.2d 264 (9th Cir. 1972).

## III. *Pre-indictment Delay*

The due process clause of the Fifth Amendment has "a limited role to play" in protecting defendants against pre-indictment delay. *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). The applicable statute of limitations is the primary guarantee against the prosecutor bringing stale criminal charges. *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966). The government is otherwise under no duty to file charges as soon as probable cause exists or even when there is enough evidence to establish guilt beyond a reasonable doubt. *Lovasco,* 431 U.S. at 791–95, 97 S.Ct. at 2049–2051; *United States v. Pallan,* 571 F.2d 497, 499–501 (9th Cir.1978), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978).

In order to block a prosecution on the basis of pre-indictment delay, the defendant must first show actual, nonspeculative prejudice resulting from the delay. *United States v. Marion,* 404 U.S. 307, 322–26, 92 S.Ct. 455, 464–466, 30 L.Ed.2d 468 (1971); *United States v. Stone,* 633 F.2d 1272, 1274 (9th Cir.1979). Once this showing is made, the due process inquiry considers the reasons for and length of the delay. *United States v. Mays,* 549 F.2d 670, 677–78 (9th Cir.1977). We review the lower court's decision denying appellants' motion to dismiss the charges for pre-indictment delay for an abuse of discretion. *United States v. Mills,* 641 F.2d 785, 789 (9th Cir. 1981), *cert. denied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981).

Rogers and Peilte argue that they were prejudiced by the destruction of a bankruptcy court reporter's notes that would have corroborated Rogers' testimony at the criminal trial. The assertion that

---

**2.** In light of our resolution of this issue, we need not reach the question posed by the parties whether the proper remedy for use of tainted evidence is suppression of the evidence or dismissal of the counts in the indictment based upon the evidence.

missing testimony might have been useful, however, does not show the "actual" prejudice required by *Marion.* *See United States v. Pallan,* 571 F.2d 497, 501 (9th Cir.1978), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978); *United States v. Mays,* 549 F.2d 670, 680 (9th Cir.1977). Here appellants merely contend that the alleged notes might have corroborated Rogers' existing testimony. *See United States v. King,* 560 F.2d 122, 130–31 (2d Cir.1977), *cert. denied,* 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283 (1977). Furthermore, appellants had three months to procure the notes between the issuance of the indictment in September and the destruction of the notes in December. We find that Rogers and Peilte have failed to demonstrate the threshold requirement of actual prejudice caused by the delay. It is therefore unnecessary for us to consider the length of or reasons for the delay. *See United States v. Mills,* 641 F.2d 785, 789 (9th Cir.1981), *cert. denied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981).

### IV. *Sufficiency of the Evidence*

In reviewing whether there was sufficient evidence to support appellant's convictions, we view that evidence and the inferences therefrom in the light most favorable to the government and determine whether "the jurors could reasonably decide that they would not hesitate to act in their own affairs upon factual assumptions as probable as the conclusion that the defendant is guilty." *United States v. Oropeza,* 564 F.2d 316, 321 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). After such a review, we conclude that a jury could reasonably decide that Rogers and Peilte were guilty of the charges in question.

The appellants' convictions are AFFIRMED.