**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank ZIELEZINSKI,**
**Defendant-Appellant.**

**No. 83-1130.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1984.

Decided Aug. 13, 1984.

Susan A. Ehrlich, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Larry Debus, Debus, Bradford, & Kazan, Ltd., Phoenix, Ariz., for defendant-appellant.

Before GOODWIN, PREGERSON and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Under a grant of use immunity, Frank Zielezinski testified before a federal grand jury about the alleged distribution of cocaine among Phoenix fire fighters. Several months later, that same grand jury indicted Zielezinski on seven counts of possession and distribution of cocaine. Zielezinski argues that a grand jury cannot properly indict a witness who has testified before it under a grant of immunity. Additionally, he argues that prosecutorial misconduct during trial requires reversal. We cannot unquestioningly permit a grand jury that has heard immunized testimony to indict the immunized witness. Thus, we remand for a hearing to determine whether Zielezinski's indictment was tainted by his testimony. If the indictment is found untainted, the convictions will stand, since they are proper in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 1982, Randy Waltenburg, a Phoenix fire fighter, was called before a federal grand jury to testify about the alleged distribution of cocaine among Phoenix fire fighters. He testified that he had once obtained cocaine from defendant Frank Zielezinski. Three hours later, Zielezinski testified before the same grand jury. At that time, the prosecutor granted Zielezinski use immunity pursuant to 18 U.S.C. § 6001 *et seq.* Zielezinski then testified about an incident when he had used cocaine in a Phoenix bar, Graham Central Station, in November 1981. Zielezinski described that incident in some detail to the grand jury, and specified his alleged source for the cocaine, a barmaid at a local lounge. Except for this incident, Zielezinski denied any knowledge of cocaine use or distribution by Phoenix fire fighters. He denied having sold cocaine to Waltenburg, a position which flatly contradicted what the grand jury had heard earlier in the day.

During the next several months, additional witnesses testified before the grand jury. Another Phoenix firefighter, Tim Gallagher, testified that Zielezinski had purchased cocaine from him on at least four separate occasions. These four occasions were all very close in time to both the alleged dealings with Waltenburg and the incident in Graham Central Station.

On November 17, 1982, the grand jury returned an indictment charging eleven persons with numerous crimes related to the possession and distribution of cocaine. Zielezinski was indicted on seven counts. Before trial, a perjury count was dismissed for vagueness. Zielezinski also argued before trial that the remaining counts should be dismissed because the indictments were returned by the same grand jury that had heard his immunized testimony. The government acknowledged that it was prohibited from using Zielezinski's testimony against him. It submitted to the court grand jury transcripts and case agent reports to establish the independent sources of the evidence upon which the remaining counts were based. No affidavits were

offered by the government, and defense counsel was never shown the materials submitted to the court. The court reviewed the transcripts *in camera*, dismissed count 19 of the indictment, which dealt with a November 1981 cocaine transaction, and concluded that the remaining counts were untainted.

On April 28, 1983, Zielezinski was found guilty of two counts of the lesser included offense of simple possession of cocaine, in violation of 21 U.S.C. § 844(a). He was acquitted of the remaining counts. Zielezinski was sentenced on May 25, 1983, and placed on probation for one year on each count, the periods to run consecutively. Zielezinski appeals these convictions.

## DISCUSSION

### I. INDICTING AN IMMUNIZED WITNESS.

Zielezinski testified before a grand jury under a grant of immunity. That grand jury then indicted him. The government insists that the indictment was untainted, since it rested entirely on sources independent of Zielezinski's own statements. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Zielezinski argues that this court should adopt the supervisory rule of *United States v. Hinton,* 543 F.2d 1002 (2d Cir.), *cert. denied,* 429 U.S. 980, 1051, 1066, 97 S.Ct. 493, 764, 796, 50 L.Ed.2d 589, 767, 783, 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1976), which flatly prohibits a grand jury from indicting a witness who has testified before it under a grant of immunity. Zielezinski argues that the *Hinton* rule is compelled both by the Constitution and by supervisory considerations. We refuse to adopt the *Hinton* rule on either of these bases. We do, however, exercise our supervisory power to require the district court to grant Zielezinski a hearing at which to challenge the government's proof of independent sources.

### A. THE *HINTON* RULE IS NOT COMPELLED BY THE CONSTITUTION.

■ Grand juries can properly indict suspects on the basis of hearsay, *see Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), evidence seized in violation of the Fourth Amendment, *see United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), or evidence obtained in violation of the Fifth Amendment. *See United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). Thus, relatively few constitutional challenges to indictments can be raised. *See United States v. Sears, Roebuck & Co.,* 719 F.2d 1386, 1391–92 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984); *United States v. Al Mudarris,* 695 F.2d 1182, 1185 (9th Cir.), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983); *United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

■ In *Hinton,* a witness gave over 200 pages of testimony before a grand jury and was later indicted by that same jury. From this extreme case, *Hinton* derived a *per se* rule that invalidates an entire class of indictments. The *Hinton* court itself did not rest its rule on a constitutional basis. *United States v. Hinton,* 543 F.2d at 1008–10. No court has adopted *Hinton* as a matter of constitutional law. Commentators suggest that *Hinton* cannot have a constitutional basis. *See* Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure* 1041–42 n. d. (1980). We conclude that the *Hinton* rule is not constitutionally compelled. We need not reach the subsidiary constitutional issue—whether Zielezinski was entitled to a hearing at which to assess possible taint—because we grant the hearing under our supervisory power.

### B. ALTHOUGH WE REFUSE TO EXERCISE OUR SUPERVISORY POWER TO ADOPT THE *HINTON* RULE, ZIELEZINSKI IS ENTITLED TO A HEARING.

■ "[G]uided by considerations of justice," *McNabb v. United States,* 318 U.S.

332, 341, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943), federal courts may "formulate procedural rules not specifically required by the Constitution." *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). Courts have repeatedly recognized the distinction between constitutional and supervisory rules. *See, e.g., United States v. Payner,* 447 U.S. 727, 735–36 n. 8, 100 S.Ct. 2439, 2446–47 n. 8, 65 L.Ed.2d 468 (1980); *United States v. Chanen,* 549 F.2d 1306, 1309 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). Constitutional restraints prohibit prosecutors from engaging in conduct that undercuts the independence of the grand jury. *See United States v. Sears, Roebuck & Co.,* 719 F.2d at 1391–92. In contrast, there are three purposes underlying use of the supervisory power: "to implement a remedy for violation of recognized rights, ... to preserve judicial integrity ... and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting,* 103 S.Ct. at 1978–79. *See United States v. Payner,* 447 U.S. at 735–36 n. 8, 100 S.Ct. at 2446–47 n. 8; *United States v. Sears, Roebuck & Co.,* 719 F.2d at 1394–95 (Norris, J., dissenting); *United States v. Loud Hawk,* 628 F.2d 1139, 1158 (9th Cir.1979) (Hufstedler, J., dissenting), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 755, 74 L.Ed.2d 972 (1980). Within this framework, the supervisory power will be exercised when "there is a clear basis in fact and law for doing so." *United States v. Chanen,* 549 F.2d at 1313. Here, although we reject the *Hinton* rule, we find a clear basis for affording Zielezinski a hearing at which to air his allegations of taint.

Constitutional requirements can often guide us in the exercise of our supervisory powers. *See United States v. Payner,* 447 U.S. at 735–36 & n. 8, 100 S.Ct. at 2446–47 & n. 8. A review of Supreme Court cases suggests that although few challenges to indictments will be heard, courts must be sensitive to improprieties that occur within the grand jury room or prosecutorial process. Although these improprieties may not be sufficiently flagrant to rise *per se* to constitutional dimensions, they may yet be deterred by proper exercise of our supervisory power.

In *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Supreme Court held that a defendant may be required to stand trial "where only hearsay evidence was presented to the grand jury which indicted him." *Id.* (quoting 350 U.S. at 819, the grant of the writ of certiorari). Justice Black offered three justifications for this holding. None of them, however, provides guidance on the issue we face today. First, Justice Black noted that the American grand jury "was intended to operate substantially like its English progenitor." *Id.* at 362, 76 S.Ct. at 408. Since English grand juries were not bound by evidentiary rules, American grand juries should not be bound. *Id.* Although this may be true,[1] the reach of this argument is

---

**1.** Commentators have criticized courts for relying on history for even this limited purpose. Grand juries today operate in a setting far different from the late eighteenth century. These changed circumstances render the historical analogy of dubious value when considering evidential questions. While grand juries have traditionally been permitted to hear inadmissible evidence, ancient grand juries "did not have the assistance of a legally trained prosecutor." Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure* 1037 (1980). With a trained prosecutor in the grand jury room, "it is argued, there is ... a greater capacity in the grand jury, assisted by its legal advisor, to distinguish between admissible and inadmissible evidence." *Id.* Thus, there is now less reason to permit the presentation of inadmissible evidence to grand juries than there was in the past.

There is another more fundamental reason to question the historical analogy. The harm caused to an individual by an unjust indictment is substantially greater today than it was 200 years ago. "In a system of justice where guilty pleas are the norm and trials are the exception, we can no longer view the prosecutor's and grand jury's decisions to indict as mere interim screening decisions." Arenella, *Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication,* 78 Mich.L.Rev. 463, 498 (1980). As trials become increasingly uncommon, "we cannot assume that the trial will necessarily deter prosecutors from seeking indictments against defendants whom they could not convict at trial." *Id.*

limited. There is no historical basis for grand juries to be permitted to violate the rights of witnesses who testify before them. *See United States v. Calandra*, 414 U.S. at 346, 94 S.Ct. at 619; *United States v. Beery*, 678 F.2d 856, 860 (10th Cir.1982). *Cf. United States v. Helstoski*, 635 F.2d 200, 203–05 (3d Cir.1980) (dismissal of indictment proper where testimony was presented to grand jury in violation of Speech and Debate Clause). Justice Black himself wrote in *Costello* that indictments must be "returned by [an] unbiased grand jury." *United States v. Costello*, 350 U.S. at 363, 76 S.Ct. at 409. The Supreme Court has never suggested that there is an historical reason for permitting prosecutors to bias a grand jury's view of the case before it.[2]

Second, Justice Black expressed concern about the potential for delay if evidentiary challenges to grand jury indictments could be heard. Justice Black feared that most defendants would insist on "a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." *Id.* at 363, 76 S.Ct. at 408. Again, this is not persuasive in the case before us. Little delay would be caused by permitting defendants to challenge indictments issued by grand juries that heard the defendants testify before them under a grant of immunity. It is rare, indeed, when a prosecutor permits a grand jury to indict an immunized witness. Unlike evidentiary challenges, which can be raised in every case, a challenge raised by an immunized witness can be raised only in rare and easily-identified cases. Thus, delay will not be common.

Finally, Justice Black argued that evidentiary challenges to indictments were unnecessary because they would "add nothing to the assurance of a fair trial," at which legal guilt would ultimately be determined.

As a result of these historical changes, it is argued, "the judiciary may have to take more positive action to insure that the grand jury functions effectively." Johnston, *The Grand Jury—Prosecutorial Abuse of the Indictment Process*, 65 J.Crim.L. & Criminology 157, 166 (1974).

*Id.* at 364, 76 S.Ct. at 409. Thus, no challenges to the adequacy or competence of evidence presented to a grand jury would be heard.

Like Justice Black's two other arguments, this provides little guidance here. Although some challenges to an indictment can be cured at trial—such as presentation of hearsay or other inadmissible evidence to the grand jury—other improprieties threaten the very integrity of the grand jury itself. *See, e.g., United States v. Kennedy*, 564 F.2d at 1338 (where a prosecutor knowingly presents perjured testimony to a grand jury, or in other "flagrant case[s]," indictments will be quashed). Where an impropriety occurs in the grand jury room itself, the indictment may be tainted. If an indictment is tainted, the Constitution requires that it be quashed. *United States v. Sears, Roebuck & Co.*, 719 F.2d at 1391–92. Thus, *Costello* does not speak to the situation before us.

The Supreme Court has consistently followed *Costello*, prohibiting challenges to grand jury indictments based on evidence that was obtained improperly. In *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), the Court denied petitioners a hearing to investigate their "unsupported suspicions" that the grand jury which indicted them had relied upon evidence illegally seized by an earlier grand jury. *Id.* at 350, 78 S.Ct. at 318. In *United States v. Blue*, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), the point was made explicit: "Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial." *Id.* at 255, 86 S.Ct. at 1419 (footnote omitted).

**2.** Moreover, since the rule we adopt is grounded in this court's supervisory power rather than in constitutional law, the historical argument becomes irrelevant. Our supervisory choices are grounded in contemporary policy choices; we are not bound to the choices of eighteenth century England.

*Costello* has also been relied upon to reject challenges to grand jury indictments based on evidence seized in violation of the Fourth Amendment. In *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Supreme Court ruled that a grand jury witness may not refuse to answer questions based on evidence obtained in an unreasonable search. The Court's language was sweeping:

> [T]he validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence; or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination.

414 U.S. at 344–45, 94 S.Ct. at 618 (citations omitted). These cases suggest that challenges to indictments will not be heard where they rest on objections to the evidence-gathering process. They leave open the possibility, however, of hearing challenges to indictments where improprieties occurred within the grand jury process itself.[3] This court, relying on Justice Black's caveat that indictments must be returned by "unbiased" grand juries, *United States v. Costello,* 350 U.S. at 363, 76 S.Ct. at 409, has permitted those challenges on both constitutional and supervisory grounds. *See* Arenella, *Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication,* 78 Mich.L.Rev. 463, 540 (1980). *See also United States v. Al Mudarris,* 695 F.2d at 1185 (courts will quash indictments in rare cases); *United States v. Kennedy,* 564 F.2d at 1338 (indictments quashed in flagrant cases). *Cf. United States v. Samango,* 607 F.2d 877, 881–82 (9th Cir.1979) (affirming district court's dismissal of indictment under its supervisory power). *Compare United States v. Basurto,* 497 F.2d 781 (9th Cir. 1974) (indictment quashed where it rested upon testimony that the government knew was perjured), *with United States v. Bracy,* 566 F.2d 649, 655 (9th Cir.1977), *cert. denied,* 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 109 (1978) (questioning vitality of *Basurto* in light of later Supreme Court decision).

In *Hinton,* just this sort of impropriety in the grand jury process was raised. The *Hinton* court reasoned that the government could never meet its heavy burden of proving that the indictment rested upon wholly independent sources where a grand jury heard an immunized witness. *United States v. Hinton,* 543 F.2d at 1009; *see Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Such proof would require "peering into the grand jurors' minds" to determine which witnesses they had believed and which they had disbelieved, whose demeanor had been impressive and whose had not, and which part of various witnesses' testimony the indictment ultimately rested upon. *United States v. Hinton,* 543 F.2d at 1010. This prospect, "both impractical and unpalatable[,]" was rejected. *Id.* The *Hinton* rule has been followed consistently in the Second Circuit. *See United States v. Tantalo,* 680 F.2d 903 (2d Cir.1982); *United States v. Anzalone,* 555 F.2d 317 (2d Cir.1977).

No other circuit has addressed the question presented in *Hinton,* and there is no Ninth Circuit authority on point. *United States v. Rogers,* 722 F.2d 557 (9th Cir. 1983), however, provides some insight into our view of challenges to grand jury indictments. There, we permitted government affidavits to meet the heavy burden of establishing an independent source for evidence improperly presented to a grand jury. These sworn statements were both "exhaustive," and made available to defense counsel. *United States v. Rogers,* 722 F.2d at 560. They thus served three fundamental purposes: a government official swore that the indictment rested entirely on independent sources; the government

---

**3.** The reference to Fifth Amendment violations in *Calandra* was limited to improprieties in the evidence-gathering process. *See Lawn v. United* *States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). It does not speak to Fifth Amendment violations before the grand jury itself.

was forced to present to the court a cogent explanation of the grand jury's decision to indict; and Rogers' counsel had an opportunity to contest the affidavits or present counter-affidavits. Here, in sharp contrast, the government simply presented a collection of transcripts to the court and asked the court to identify the independent sources for the indictment. No government official swore that independent sources existed, and Zielezinski never saw—or had the opportunity to contest—the government's proof. Rogers was thus protected by a number of safeguards that Zielezinski was not accorded.

Although Zielezinski was given fewer procedural protections than Rogers, he was actually entitled to more. First, in *Rogers*, a person who had heard the defendant's immunized testimony later improperly repeated it before a grand jury. Since the immunized information was simply recounted by a third person—and not presented by the defendant himself—the grand jury in *Rogers* could not doubt the defendant's credibility on the basis of his immunized testimony. *Id.* Since this assessment of credibility can taint an indictment, *United States v. Hinton*, 543 F.2d at 1010, the threat to judicial integrity is substantially greater here than it was in *Rogers*.

Second, *Rogers* arose in the unique context of a statutory grant of immunity. Section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10) (1976), provides use and derivative use immunity in a subsequent criminal case for testimony given by a bankrupt during certain bankruptcy proceedings. This is a far different situation from the usual grant of immunity under 18 U.S.C. § 6002. We cannot expect section 7(a)(10) immunity, granted categorically by legislative fiat, to be carefully tailored to the needs of each individual witness. In contrast, section 6002 immunity is granted during a proceeding "in the hands of a prosecutor who is a lawyer, and who has ample time to consider the appropriate course of action." Note, *Standards for Exclusion in Immunity Cases after Kastigar and Zicarelli*, 82 Yale L.J. 171, 179 (1972). It is thus proper for us to hold prosecutors acting under section 6002 to a fairly high degree of care.

■ Between the flat prohibition of *Hinton* and the exhaustive affidavits respected in *Rogers*, there stands a middle ground that accords justice here. We will neither prohibit a grand jury from indicting any witness who testifies before it under a grant of immunity, nor permit prosecutors to shirk their affirmative duty to establish independent sources. Zielezinski is entitled to a hearing at which the government must establish the independent sources upon which the indictment rested. The district court is free to restrict the hearing as necessary to protect grand jury secrecy. This rule best satisfies the considerations underlying the exercise of our supervisory power.

First, requiring a hearing will effectively deter governmental misconduct. Generally, prosecutors should not encourage grand juries to indict an immunized witness. Even if proper, the indictment *appears* tainted. On a more fundamental level, in this situation courts ought to examine the effect of the prosecutor's choice on the integrity of the grand jury process. There is no compelling reason for a prosecutor to ask a grand jury to indict an immunized witness. If a prosecutor thinks such an indictment necessary, he should simply assemble a new, untainted, grand jury, and present the evidence to it. This may involve some extra work or time, but it is effort that must be expended to avoid the appearance of impropriety. By granting a hearing to Zielezinski, we provide notice that grand juries should rarely indict immunized witnesses, and require the prosecutor to establish convincingly the independent sources of his evidence.

Additionally, our rule will protect the integrity of the judicial process. We cannot permit convictions to stand where indictments are tainted, and we must satisfy ourselves that prosecutors truly relied upon independent sources. It is entirely proper to require fairly substantial proof in these circumstances. *Kastigar* itself de-

scribes the prosecutor's "affirmative duty" to establish independent sources as a "very substantial protection." *United States v. Kastigar*, 406 U.S. at 460–61, 92 S.Ct. at 1664–65. Compliance with that affirmative duty must be proved by a preponderance of the evidence. *United States v. Rogers*, 722 F.2d at 560.

Here, the potential bias created by the prosecutor's actions does not rise *per se* to constitutional proportions. However, an immunized witness did contradict what other witnesses testified to under oath regarding events very close in time to those underlying the indictment. The government cannot simply provide transcripts to the court, *in camera*, and assume that it has met its *Kastigar* burden. Only a hearing can convincingly establish that the command of the Fifth Amendment has been satisfied. *Cf. United States v. Sears, Roebuck & Co.*, 719 F.2d at 1388 (district court held hearing to assess prosecutorial misconduct before grand jury). Accordingly, only a hearing can adequately protect the integrity of this court. We remand for a hearing at which the prosecutor must establish the independent sources upon which Zielezinski's indictment rested. Only if the indictment proves untainted will Zielezinski's convictions stand.

## II. PROSECUTORIAL MISCONDUCT.

Zielezinski also complains of certain alleged improprieties by the prosecutor during argument. The general rule is that improprieties in arguments "do not require a new trial unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). Viewed under this standard, Zielezinski's allegations of misconduct are uniformly without merit.

## CONCLUSION

Prosecutors should avoid permitting grand juries to indict witnesses who have testified before them under grants of immunity. To avoid both violations of grants of immunity and the appearance of impropriety, we grant Zielezinski a hearing at which the government must demonstrate that this indictment rested on sources independent of Zielezinski's own testimony. If the indictment proves tainted, Zielezinski's convictions must then be reversed.

REMANDED.