**UNITED STATES of America, Plaintiff,**

v.

**Michael BARTEL, Defendant.**

No. 92–80338.

United States District Court, E.D. Michigan, S.D.

Feb. 16, 1993.

Stephen J. Markman, U.S. Atty. by Robert P. Cares, Asst. U.S. Atty., Detroit, MI, for plaintiff.

Sharon A. Payne, Southfield, MI, for defendant.

ORDER ACCEPTING, IN PART, MAGISTRATE'S FINDINGS AND RECOMMENDATIONS RE: DEFENDANT'S MOTION TO DISMISS INDICTMENT, AND DENYING DEFENDANT'S MOTION

GADOLA, District Judge.

This Court has conducted a de novo review of the findings and recommendations of the Magistrate Judge herein on defendant's motion to dismiss the indictment, under the provisions of 28 U.S.C. § 636(b)(1)(B), as set forth in the Report and Recommendation of the Magistrate Judge dated January 19, 1993. The Magistrate Judge conducted an evidentiary hearing and this Court has also reviewed the grand jury transcripts, as did the Magistrate Judge.

This Court's de novo determinations thereon are as follows:

(1) The compelled testimony of defendant before the grand jury, pursuant to an immunity order, did not lead directly or indirectly to defendant's subsequent indictment.

(2) The evidence which the government proposes to use against defendant herein was derived from legitimate sources wholly independent of the compelled testimony of defendant.

(3) The indictment of defendant was not based in any manner whatsoever on

defendant's compelled grand jury testimony or on any evidence derived from that testimony.

(4) Defendant's compelled grand jury testimony was entirely exculpatory.

(5) The government presented substantial evidence, not derived in any manner whatsoever, directly or indirectly, from the compelled grand jury testimony of defendant, and which substantial evidence resulted in the indictment of defendant.

This Court does not adopt the ruling in *United States v. Hinton*, 543 F.2d 1002, 1010 (2d Cir.1976), which has been explicitly rejected by the Ninth Circuit, *United States v. Zielezinski*, 740 F.2d 727, 729 (9th Cir.1984), the District of Columbia Circuit, *United States v. North*, 910 F.2d 843, 870 (D.C.Circuit 1990) and the Eighth Circuit, *United States v. Garrett*, 797 F.2d 656, 663 (8th Cir.1986).

An evidentiary hearing has been held and the Magistrate Judge has correctly made a factual finding, fully supported by the record, that the evidence which was presented to the grand jury and which will be offered at trial was not derived, directly or indirectly, from the immunized testimony of the defendant. This Court has, in that regard, reviewed the pertinent grand jury transcripts, which lead to the inescapable conclusion that the immunized testimony of the defendant was neither used nor exploited by the grand jury. Further, the exculpatory, non-incriminating testimony of the defendant did not contribute in any conceivable manner to his being indicted.

The government has successfully met its burden under *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) by showing clearly and convincingly that the immunized testimony of defendant will not work to his detriment directly or indirectly in the sense of furnishing either direct evidence or leads from which other evidence has been obtained to assist in his prosecution.

This Court does not, however, accept and adopt the Magistrate Judge's finding that "substantive charges of wrongdoing brought against an immunized witness are the functional equivalent of perjury charges", or the Magistrate Judge's conclusion that if the Court does not so find, defendant's motion to dismiss should be granted. As the Magistrate Judge concedes, his "suggestion that prosecution for the substantive offense is a 'novel one'" for which he finds no supporting case authority. This Court rejects that theory and recommendation of the Magistrate Judge.

Nevertheless, for the reasons above set forth, there is adequate reason to accept the finding and recommendation of the Magistrate Judge that defendant's motion be denied; and accordingly it will be denied.

### ORDER

The motion of defendant for dismissal of the indictment herein is DENIED.

### REPORT AND RECOMMENDATION

KOMIVES, United States Magistrate Judge.

### I. *RECOMMENDATION:*

The Court should deny the motion of defendant Bartel to dismiss the indictment if it accepts the rationale that the indictment is the functional equivalent of a perjury charge. Otherwise, the motion should be granted.

### II. *REPORT:*

#### A.

Counsel for defendant Bartel has filed a motion to dismiss the indictment. She notes that her client was given immunity after asserting his Fifth Amendment privilege against self-incrimination when testifying before a federal grand jury on October 16, 1991. He then reappeared before the grand jury and testified extensively on December 5, 1991. On July 16, 1992, the same grand jury returned a superseding indictment [1] which includes charges against

---

**1.** The grand jury returned its initial indictment on April 13, 1992, charging twelve persons, but not Bartel.

defendant Bartel for conspiracy and substantive violations of 21 U.S.C. §§ 841(a)(1) and 846. Bartel's counsel argues that her client's compelled testimony directly led to his subsequent indictment and that the evidence which the government proposes to use against her client at trial is not derived from a legitimate source wholly independent of the compelled testimony. Counsel relies upon *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

### B.

1. The government's response to the motion concedes that Bartel was compelled to testify pursuant to an immunity order. The government denies that the later returned indictment was based on Bartel's testimony or on any evidence derived from that testimony and asserts that none of the evidence that will be presented at the trial is derived from Bartel's compelled testimony. The government also conceded that an evidentiary hearing was required. This hearing was conducted by the undersigned on December 10, 1992, and a transcript of that hearing has now been prepared and filed. A copy of the transcript of the testimony of defendant Bartel given before the grand jury on December 5, 1991, was admitted into evidence at the hearing as Government Exhibit 1.

2.a) The government presented the testimony of Special Agent Michael Blackwood of the Drug Enforcement Administration at the evidentiary hearing. Blackwood testified that he had read the transcript and was aware that it was given pursuant to a court order compelling Bartel to testify. Blackwood asserted that, in his testimony before the grand jury, Bartel did not incriminate himself.

b) Blackwood also stated that he had interviewed a person named Patrick Ogle on April 30, 1991, after learning that Ogle had been arrested in Missouri while transporting 200 pounds of marijuana. Ogle had subsequently agreed to cooperate with law enforcement. Ogle informed Blackwood on April 30, 1991, that he had been a marijuana courier between Florida and Detroit for Kenneth Christunas and others in the Christunas organization. Ogle specifically mentioned David Christunas, a person he had grown up with in Marquette, Michigan. Ogle had also lived with David and Ernie Christunas in Detroit and Garden City, Michigan in 1983. Ogle specifically advised Blackwood that on a number of occasions while delivering marijuana with David Christunas in the Detroit area, he had gone to Bartel's home in Romulus. Ogle and David Christunas, who was with him on these occasions, would meet Bartel and go into his garage where Bartel had bales of marijuana in the rafters. One or two of these bales would be loaded and delivered by David Christunas to customers. Blackwood testified that nothing said by Bartel in his grand jury testimony assisted him in any way in identifying and locating Patrick Ogle. He reiterated the fact that his interview of Ogle took place in April, 1991, whereas Bartel's grand jury testimony occurred in December of 1991.

c) Blackwood also stated that during the course of his investigation, he interviewed Johnny Frederickson over a six-month period in 1991 and 1992. Frederickson was cooperating with the government after being arrested in Florida. He gave Blackwood information about persons who had engaged in drug transactions in Michigan. Frederickson, like Ogle, was a courier for the Christunas organization and brought marijuana from Florida, as well as Texas, into the Detroit area. Frederickson told Blackwood that on one occasion he was involved in a car accident near Kenneth Christunas' home in West Bloomfield. Frederickson borrowed Kenneth Christunas' car subsequent to this accident in order to continue making marijuana deliveries for Christunas. Later, after Frederickson became aware that Florida law enforcement was investigating him, he brought the car back from Florida to Detroit and dropped it off at the home of Kenneth Christunas. He then returned to Florida but, before leaving, told Kenneth Christunas that he was totally broke, had no car to drive around and needed to borrow about $10,000. Kenneth Christunas, who was driving Frederickson to the airport, stopped

at Bartel's home, went into the house, and returned with approximately $9,000, which he gave to Frederickson. Frederickson identified a photograph of Bartel's home displayed to him by Blackwood. Blackwood testified that nothing said by Bartel in his grand jury testimony was helpful in identifying Frederickson as a member of the Christunas organization.

d) Blackwood also testified regarding an interview of a person named Carol Bowman, which took place in Bowman's lawyer's office after an agreement had been reached whereby she would cooperate with the government in the investigation of this case. That interview took place on June 24, 1992. Bowman told Blackwood that she was a marijuana broker for the Kenneth Christunas organization and provided information about various members of the organization. Blackwood did not ask Bowman about defendant Bartel, but near the end of the interview, Bowman mentioned to Blackwood that he hadn't asked her yet about Michael Bartel. Blackwood then asked Bowman to state what she knew about Bartel and was told that Bowman had met Bartel one time at his home after a deal was brokered in Houston, Texas. Frederickson subsequently transported the marijuana to Detroit. When Bowman returned to Michigan, she called David Christunas to get paid for this transaction and went to his home. David Christunas brought Bowman over to Bartel's home in Romulus. They went into the garage and weighed the marijuana that had been received from Houston, Texas. Bowman was told that the shipment was eight pounds short of the agreed-upon load and that this would result in a lesser amount of money being paid. Blackwood testified that Carol Bowman is not mentioned in Bartel's grand jury testimony, and that nothing in Bartel's testimony assisted him in identifying or locating Bowman.

e) Blackwood concluded his testimony by stating that there was nothing whatsoever in Bartel's grand jury testimony which

gave him any investigative leads in the case.

### C.

1. Based upon the foregoing testimony of Agent Blackwood, as well as a review of the transcript of defendant Bartel's testimony before the grand jury, I conclude that there is no basis upon which a finding could be made that any evidence to be offered at trial against defendant Bartel would be derived from his grand jury testimony. Put another way, the government has successfully discharged its burden under the *Kastigar* decision to show clearly and convincingly that the immunized testimony will not directly or indirectly work to the detriment of defendant Bartel in the sense of furnishing either direct evidence or leads from which other evidence has been obtained to assist in his prosecution.

2. In 1975, the United States Court of Appeals for the Second Circuit, acting in its supervisory capacity to promulgate rules governing federal criminal prosecutions, stated that the government could not seek an indictment of a defendant from a grand jury which had heard the testimony of that defendant after immunity had been granted. *United States v. Hinton*, 543 F.2d 1002, 1006–10 (2nd Cir.1976); *cert. den.* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (*sub nom. Carter v. United States*, 1976); *cert. den.* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 783 (*sub nom. Bates v. United States*, 1977). The cases of defendants Hinton and Bartel are similar in that both, after invoking their Fifth Amendment privilege not to be required to incriminate themselves, were thereupon accorded use immunity to supplant their claims of privilege and proceeded to testify under oath before the grand jury in an exculpatory fashion, denying any criminal involvement. The Second Circuit concluded that it would be difficult to inquire into the minds of the jurors to ascertain whether Hinton's testimony had been improperly used,[2] and laid down a blanket

---

**2.** The Second Circuit stated that a grand juror might draw an inference of guilt from either the immunized witness' *confirmation* or false *denial*

of participation in the criminal acts, whereas no such inference could be drawn from a silent witness. 543 F.2d at 1009.

prohibition against the seeking of an indictment from the same grand jury.

My reason for suggesting that *Hinton* should not be followed begins with the assumption that, had Hinton (and/or Bartel) admitted guilt following the obtaining of immunity, the witness would not have been indicted. The government had apparently made an initial determination that it was willing to give up the possibility of prosecuting the immunized witness in exchange for obtaining testimony of value in the prosecution of others involved in the criminal activity being investigated.[3] After hearing the witness' denial of criminal involvement, the government (and the grand jury) were, at a minimum, free to consider a charge of perjury or of giving a false statement, a point conceded by the Second Circuit in footnote 9, 543 F.2d at 1010:

> Of course the right of any grand jury to consider (18 U.S.C. § 6002) 'a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order [granting immunity]' is not involved in this appeal in any way.

I respectfully disagree with the Court's conclusion that the right of the grand jury to prosecute for perjury, etc., "is not involved in this appeal in any way," except to the extent that this may reflect the arguments put forward in the government's brief. If the indictment returned against Hinton had included one or more counts of perjury for falsely denying her guilt, the district court's denial of her motion to dismiss, even as to the substantive counts, might have been upheld. I suggest that the grand jury's vote to return substantive charges against Hinton (and Bartel) is the functional equivalent of a charge of perjury because it implicitly asserts that the exculpatory denial is false.

However, if this Court is unpersuaded by the foregoing analysis, and also concludes that *Hinton* states the rule to be followed, albeit in the absence of any precedent in

Sixth Circuit jurisprudence, Bartel's motion should be granted.

3. A similar analysis arises from the decision of the Ninth Circuit in *United States v. Zielezinski*, 740 F.2d 727 (9th Cir.1984). That Court specifically declined to adopt the Second Circuit's *per se* rule precluding indictment of an immunized witness, 740 F.2d at 729, but remanded the case for a hearing at which the government would have the burden of proving that Zielezinski's indictment rested on independent sources. Zielezinski, unlike Hinton and Bartel; had admitted some guilt, i.e., the use of cocaine on one occasion. However, the grand jury was investigating allegations of cocaine usage by city firefighters, and Zielezinski denied any such knowledge. He also specifically denied selling cocaine to a witness whom the grand jury had just heard testify to the contrary. The Ninth Circuit stated that "[g]enerally, prosecutors should not encourage grand juries to indict an immunized witness" (740 F.2d at 727), but should consider proceeding before another grand jury. However, a motion to dismiss may be denied, if, after an evidentiary hearing, a court is convinced that the grand jury had independent sources for the charges later filed.

Following the remand, an evidentiary hearing was held and Zielezinski's motion to dismiss was again denied. On appeal, the Ninth Circuit affirmed. 756 F.2d 1448 (9th Cir.1985). The final two paragraphs are crucial:

> Following the hearing, Judge Earl Carroll of the United States District Court for the District of Arizona issued an order upholding Zielezinski's conviction. The judge found that the government's sources of evidence were independent of the defendant's immunized testimony, the government's conduct did not threaten the integrity of the indictment by the grand jury, and that there was nothing in the record to suggest that the grand jury's decision was based on an assessment of the defendant's credibility.

---

3. "The purpose of § 6002 was to limit the scope of immunity to the level that is constitutionally required, as well as to limit the use of immunity to those cases in which the Attorney General, or officials designated by him, determine that gain-

ing the witness' testimony outweighs the loss of the opportunity for criminal prosecution of that witness." (Footnote omitted.) *Pillsbury v. Conboy*, 459 U.S. 248, 260–61, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983).

The finding of the district court that the government's evidence is untainted by immunized testimony must be upheld unless clearly erroneous. *United States v. Rogers*, 722 F.2d 557, 560 (9th Cir.1983), *cert. denied*, [469] U.S. [835], 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). Defendant's counsel conceded at the hearing that the record includes evidence of the government's independent sources, but argued, and continues to argue in this appeal, that the indictment was tainted by the grand jury's assessment of Zielezinski's credibility during his immunized testimony. Judge Carroll specifically addressed this argument at the hearing. A review of the record discloses nothing that compels a reversal of Judge Carroll's finding as clearly erroneous.

Unless the court accepts the argument that substantive charges of wrongdoing brought against an immunized witness are the functional equivalent of perjury charges, it should grant Bartel's motion to dismiss, because a perusal of the grand jury transcript of Bartel's testimony shows that both the Assistant United States Attorney and the grand jurors viewed with suspicion and disbelief the exculpatory denials of Bartel, and indicated also that his initial claim of his privilege against self-incrimination was now being held against him. The testimony of Agent Blackwood, while not directly focussed on the evidence presented to the grand jury, I take to be an implicit assertion that the evidence gathered from Ogle, Frederickson and Bowman was communicated to the grand jury. In that sense, there were "independent sources" for the substantive charges brought against Bartel. However, the admonition of the Second Circuit in *Hinton* (accepted in part by the Ninth Circuit in *Zielezinski*) regarding improper usage of immunized testimony that is a false denial of participation is echoed in the transcript of Bartel's testimony.

4. The Eleventh and Eighth Circuits and the District of Columbia Circuit seemingly share the view expressed by the Ninth Circuit. *United States v. Byrd*, 765 F.2d 1524 (11th Cir.1985); *United States v. Garrett*, 797 F.2d 656 (8th Cir.1986); *United States v. Kember*, 648 F.2d 1354 (D.C. 1980). *See also United States v. Bloom*, 586 F.Supp. 939 (S.D.Fla.1984).

5. My suggestion that prosecution for the substantive offense is the functional equivalent of a perjury prosecution is a novel one, and I find no cases discussing the point. Indeed, at least one court has held that the ordinary remedy for the government when an immunized witness lies or fails to cooperate fully is a prosecution for perjury or contempt, rather than abrogation of the immunity agreement and use of the information truthfully given by the immunized witness to prosecute him for other offenses. *United States v. Kurzer*, 534 F.2d 511 (2nd Cir.1976); *United States v. Glover*, 608 F.Supp. 861, 863 (S.D.N.Y. 1985), *aff'd* 779 F.2d 39 (2d Cir.1985), *cert. denied*, 475 U.S. 1026, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986).

I do find limited support in the language and reasoning of the Supreme Court in *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). The Court, in holding that truthful portions of Apfelbaum's immunized testimony could be used against him in a subsequent prosecution for false testimony, stated, *inter alia*, that "[t]he legislative history of § 6002 shows that Congress intended the perjury and false-declarations exception to be interpreted as broadly as constitutionally permissible." 445 U.S. at 122, 100 S.Ct. at 952. Later, the Court referred to the grant of immunity as a "bargain," noting approvingly that "[t]he Government has kept its part of the bargain...." 445 U.S. at 130, 100 S.Ct. at 957. Justice Blackmun, concurring in the judgment, wrote in part that, because the privilege against self-incrimination "operates only to protect the witness from compulsion of *truthful* testimony of an incriminating nature," perjury or the making of false statements under a grant of immunity "violates a basis assumption upon which the privilege and hence the immunity depend." (Emphasis in original.) 445 U.S. at 135, 100 S.Ct. at 959.

III. *NOTICE TO PARTIES REGARD-ING OBJECTIONS:*

The parties to this action may object to and seek review of this Report and Recom-

mendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981), *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated Jan. 19, 1993.