UNITED STATES of America, Appellee,

v.

**Edward E. GARRETT, Appellant.**

**No. 85–1528.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1986.
Decided July 24, 1986.

---

Michael R. Salamo, Fayetteville, Ark., for appellant.

Steven N. Snyder, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and MURPHY * District Judge.

JOHN R. GIBSON, Circuit Judge.

Edward E. Garrett appeals his conviction following a jury trial on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1982), and one count of false declarations before a grand jury (perjury) in violation of 18 U.S.C. § 1623 (1982). Garrett's principal contention on appeal is that the district court erred in not dismissing the conspiracy count in the indictment because the grand jury which returned the indictment heard him testify on related matters under a grant of use and deriva-

tive use immunity, in violation of his fifth amendment privilege against self-incrimination. Garrett also contends that the district court erred in not dismissing the indictment because the prosecution failed to respond adequately to a motion for a bill of particulars granted by the court, and thereby improperly withheld information necessary to enable him to prepare an effective alibi defense. Finally, Garrett contends that the district court improperly limited his cross-examination of an unindicted co-conspirator to show bias, in violation of his sixth amendment rights. We reverse and remand for an evidentiary hearing on the grand jury issue, and affirm the district court in all other respects.

In the fall of 1983, the Federal Bureau of Investigation arrested Don Louis Church in northwest Arkansas in possession of a substantial quantity of cocaine. An address book found on Church at the time of arrest listed Garrett's name and phone number.

On January 5, 1984, a grand jury, impaneled to investigate cocaine trafficking in northwest Arkansas involving Church and other named and unnamed individuals, called Garrett as a witness to inquire why his name appeared in Church's address book, and to determine his relationship with Church and another target of the grand jury, John Wesley Cooper, Jr. The grand jury informed Garrett of its charge, and advised him that he had been granted use immunity. The grand jury inquired into Garrett's relationship with Church and Cooper, and specifically asked whether Church or Cooper had ever discussed cocaine dealings with him. Garrett stated that both were merely friends, and that neither had ever discussed cocaine with him.[1] The transcript of Garrett's entire testimony before the grand jury, all of it self-exculpatory, totalled thirty-nine pages.

Some seven months later, in July 1984, Church and Cooper agreed to cooperate

---

* The Honorable DIANA E. MURPHY, United States District Judge for the District of Minnesota, sitting by designation.

1. The colloquy between the prosecutor and Garrett concerning his knowledge of and involvement in cocaine trafficking was the basis for the perjury count of the indictment.

with the government. In their statements to the authorities, Church and Cooper disclosed that they had conspired to obtain and distribute twenty kilograms of cocaine. Cooper contacted Garrett, who met with both Cooper and Church at Cooper's home, to discuss the sale of a portion of the cocaine. According to Church and Cooper, Garrett met them at Cooper's home in Bella Vista, Arkansas, purchased and took delivery of two kilograms of cocaine, and paid the one hundred thousand dollar purchase price over a period of approximately five weeks.

In November 1984, Special Agent Hardin, who had been involved in the investigation, appeared before the grand jury which had heard Garrett's immunized testimony. Hardin informed the grand jury of Garrett's role in the conspiracy, at times reading from statements Church and Cooper had supplied the FBI. The grand jury thereafter returned a two-count indictment against Garrett: count one charged him with conspiring to distribute cocaine with Cooper and Church; count two charged him with providing perjurious testimony to the grand jury.

Before trial, the defendant filed a motion to dismiss the substantive conspiracy count of the indictment on the ground that the grand jury which heard his immunized testimony was incompetent to return an indictment charging him with substantive violations relating to matters on which he had testified. In its response, the government provided the district court with a copy of the grand jury testimony of Agent Hardin, which contained the inculpatory statements of Garrett's co-conspirators; Garrett's grand jury testimony was already part of the trial court record. The district court, without holding a hearing to determine if the indictment was based in any way on Garrett's immunized testimony, denied the motion to dismiss. Garrett was convicted

at trial on both counts. This appeal followed.

### I.

Garrett's principal contention on appeal is that the government acted improperly in securing his indictment on the substantive charge of conspiracy to distribute cocaine from the same grand jury which had heard his immunized testimony on related matters. Garrett contends that the grand jury necessarily used his immunized testimony in returning the indictment, thus violating his fifth amendment privilege against self-incrimination, and the district court erred in not dismissing the conspiracy count of the indictment. Alternatively, he argues that the district court erred in not holding an evidentiary hearing to ensure that the indictment did not rest, directly or indirectly, on his immunized testimony.

The federal use immunity statute, 18 U.S.C. § 6002 (1982), provides that no testimony or other information which a witness is compelled to disclose to the grand jury under the immunity order may be used against him, directly or indirectly, in a criminal prosecution except for perjury.[2] In *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court held that compelling testimony from a grand jury witness granted use immunity does not violate the witness's fifth amendment privilege against self-incrimination. The Court reasoned that the immunity provided by section 6002 is at least coextensive with the scope of the fifth amendment privilege, *id.* at 448–58, 92 S.Ct. at 1658–63; an immunized witness therefore is left in " 'substantially the same position as if the witness had claimed his privilege' in the absence of * * * [the] grant of immunity." *Id.* at 458–59, 92 S.Ct. at 1663–64 (quoting *Murphy v. Waterfront Commission*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964)). The Court further held, however, that to enforce the

---

2.  18 U.S.C. § 6002 provides, in relevant part: [N]o testimony or other information compelled under [an order of use immunity] (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in a criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

statutory prohibition on any use of the immunized testimony and adequately protect the witness's fifth amendment privilege, an immunized witness subsequently prosecuted "need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Id.* at 461–62, 92 S.Ct. at 1665. This burden, the Court explained, provides a "very substantial protection," *id.* at 461, 92 S.Ct. at 1665; it "is not limited to a negation of the taint, rather it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460, 92 S.Ct. at 1664.

Garrett contends that in the unique situation where the grand jury which has heard a witness's immunized testimony later indicts the witness, the government cannot carry its affirmative burden prescribed in *Kastigar* by simply submitting grand jury transcripts to the district court for inspection *in camera.*[3] Garrett points out that the two federal courts of appeals which have addressed this question have disapproved of this practice, and, acting under their general supervisory powers, have mandated either outright dismissal of the indictment, *United States v. Hinton,* 543 F.2d 1002 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), or a full evidentiary hearing be held to ensure that the grand jury made no direct or derivative use of the immunized testimony,

*United States v. Zielezinski,* 740 F.2d 727 (9th Cir.1984).

The government argues that under *United States v. Costello,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and subsequent cases, courts may not dismiss or question an indictment, valid on its face, on the ground that the grand jury considered incompetent evidence, including evidence obtained in violation of an individual's fifth amendment privilege. *See United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). The government further argues that even if the courts are not forbidden from looking behind an indictment under these specific circumstances, it clearly carried its burden of proving that all evidence which supported the indictment was derived from sources wholly independent of Garrett's immunized testimony, and no evidentiary hearing was required.

### A.

In *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397, the Supreme Court held that the fifth amendment's grand jury clause[4] does not require the dismissal of an indictment based solely on hearsay evidence. Relying primarily on the historical practices of the English grand jury, *id.* at 362, 76 S.Ct. at 408, the Court held that a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence, whether based on the Constitution or their supervi-

---

**3.** Cases in which a witness who has provided immunized testimony to one grand jury is subsequently indicted by a second grand jury on charges related to matters on which he testified under immunity, are not uncommon in the federal courts. *See United States v. Hampton,* 775 F.2d 1479 (11th Cir.1985); *United States v. Byrd,* 765 F.2d 1524 (11th Cir.1985); *United States v. Rogers,* 722 F.2d 557 (9th Cir.1983), *cert. denied,* 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); *United States v. Tantalo,* 680 F.2d 903 (2d Cir.1982); *see also United States v. Hinton,* 543 F.2d 1002, 1009 n. 8 (2nd Cir.1976) (collecting cases). Where two grand juries are in-

volved, there is not the same concern that the district court cannot accurately determine whether the indicting grand jury, consciously or unconsciously, used some of the immunized testimony.

**4.** The grand jury provision of the fifth amendment provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *." U.S. Const. amend. V.

sory powers, "would run counter to the history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules." *Id.* at 364, 76 S.Ct. at 409. The Court concluded, "[a]n indictment returned by a legally constituted and unbiased grand jury * * *, if valid on its face, is enough to call for trial on the charge on the merits." *Id.* at 363, 76 S.Ct. at 408.

In later cases, the Court has made clear that *Costello* bars a defendant's challenge to an indictment "otherwise valid on its face," even where the evidence presented to the grand jury to support the indictment was obtained in violation of the Constitution, including the fifth amendment privilege against self-incrimination. *See Calandra,* 414 U.S. at 345, 94 S.Ct. at 618 (witness before a grand jury could not refuse to answer questions based on evidence which had been obtained through an unconstitutional search); *Lawn,* 355 U.S. at 348–49, 78 S.Ct. at 317 (petitioner not entitled to an evidentiary hearing to determine if the indicting grand jury had considered information secured by a prior grand jury in violation of his fifth amendment privilege); *Blue,* 384 U.S. at 255 n. 3, 86 S.Ct. at 1419 n. 3 (suggesting, as alternative holding, error for district court to quash indictment because evidence obtained in violation of defendant's fifth amendment privilege submitted to grand jury). The government asserts that *Costello,* as reinforced in these later cases, bars the district court from questioning or dismissing the indictment because the grand jury may have used immunized testimony in violation of Garrett's fifth amendment privilege.

We reject this argument. The Court in *Costello* held only that the grand jury provision of the fifth amendment does not limit the kind of evidence which may be assessed by a grand jury. No claim was made, nor did the Court consider, that limitations be placed on the grand jury process itself to safeguard a witness's fifth amendment privilege against self-incrimination. *Costello* simply does not consider the power of a court to look behind or dismiss an indictment where there is a strong likelihood that the grand jury process itself violated the witness's fifth amendment privilege. As the Ninth Circuit concluded in *Zielezinski, Costello* and its progeny only bar challenges to indictments in which an impropriety occurred in the evidence-gathering process; they do not bar "challenges to indictments where improprieties occurred within the grand jury process itself." 740 F.2d at 732.[5]

Furthermore, as the Supreme Court itself recognized, the rule of *Costello* cannot be extended to permit the grand jury to violate the constitutional rights of a witness without consequence. In *Calandra,* the Court specifically noted that the grand jury may consider incompetent evidence, "but it may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law. * * * Although, for example, an indictment based on evidence obtained in violation of a defendant's Fifth Amendment privilege is nevertheless valid, * * * the grand jury may not force a witness to answer questions in violation of that constitutional guarantee." 414 U.S. at 346, 94 S.Ct. at 619 (citations omitted). *See United States v. Beery,* 678 F.2d 856, 859–60 (10th Cir. 1982), *cert. denied,* 105 S.Ct. 2142, 85

**5.** The Ninth Circuit, explicitly rejecting the government's argument in *Zielezinski,* noted that the reasons advanced by the Court in *Costello* to support its holding do not support a rule barring challenges to indictments based on evidence secured by the grand jury in violation of witness's fifth amendment privilege. First, the fact that the English grand jury, which served as the model for the right enshrined in the fifth amendment, was not limited in the kind of evidence which it could consider, 350 U.S. at 362–63, 76 S.Ct. at 408, does not compel the conclusion that grand juries were historically permitted "to violate the rights of witnesses who testify before them." 740 F.2d at 730–31. Second, permitting challenges to indictments in these circumstances would not provide the defendant with an unwarranted opportunity to delay the criminal process. *See* 350 U.S. at 363, 76 S.Ct. at 408. Grand juries are rarely asked to indict an immunized witness, fortunately, and thus the threat to orderly and expeditious pace of the criminal process is minimal. 740 F.2d at 731.

L.Ed.2d 499 (1985); *cf. United States v. Helstoski*, 635 F.2d 200, 203–05 (3d Cir. 1980) (*Costello* does not prevent a court from looking behind an indictment to determine if a grand jury violated speech and debate clause).

■ We therefore conclude that *Costello* and its progeny do not bar challenges to indictments returned by a grand jury against an individual who has testified under a grant of immunity before the grand jury.[6]

### B.

We must now consider whether the district court's actions in the present case complied with constitutional requirements and whether those actions, if constitutional, were sufficient as a matter of proper judicial policy. We begin with the requirement imposed in *Kastigar* that a defendant who testifies under a grant of immunity before a first grand jury, and who subsequently is indicted by a second grand jury on a related matter, is entitled, as a matter of constitutional law, to force the prosecuting authority to shoulder "the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." 406 U.S. at 461–62, 92 S.Ct. at 1665. Two courts of appeals have considered the effect of this requirement where a defendant is indicted by a grand jury which earlier has heard his immunized testimony.

In *United States v. Hinton*, 543 F.2d 1002, the defendant appeared before the grand jury and, after being immunized, provided over 200 pages of testimony, all of it self-exculpatory. Two years later, after having heard inculpatory evidence from a co-conspirator, the same grand jury indicted her on charges related to matters on which she had testified. The Second Circuit dismissed the indictment, and adopted

a per se rule prohibiting the government from securing an indictment of a witness on charges other than perjury from the same grand jury which heard the witness's immunized testimony. *Id.* at 1009–10. The court concluded that, when a witness has provided immunized testimony before the same grand jury which indicted her, the government simply cannot satisfactorily meet the "heavy burden" of demonstrating a "wholly independent" source for the evidence on which the indictment rests. *Id.* There was no forseeable way, the court concluded, short of the "impractical and unpalatable" method of "peering into the grand jurors' minds, or of examining them individually," to establish definitively that the grand jury did not improperly use the witness's immunized testimony or leads or evidence derived from it. *Id.* The court noted, moreover, that the possibility that the grand jury might improperly use a witness's immunized testimony was not avoided where the testimony before the grand jury was, as in *Hinton*, substantially exculpatory. Even where a witness has denied participation in criminal acts, the court observed, a juror can draw an inference of guilt from the act or manner of denial, which could not have been drawn had the witness been permitted to assert the fifth amendment privilege. *Id.* at 1009. This is particularly true, the court noted, where a witness's denial of participation in one act follows or is followed by testimony of others inculpating the witness in other criminal acts. *Id.*

In *United States v. Zielezinski*, 740 F.2d 727, the Ninth Circuit rejected the Second Circuit's per se dismissal rule. In *Zielezinski*, the defendant testified before a grand jury under a grant of use immunity that he had once used cocaine, but denied any other involvement in, or knowledge of the use or distribution of cocaine. *Id.* at 728. Other witnesses, testifying both before and

---

**6.** Moreover, a rule prohibiting a challenge to an indictment returned by the grand jury which heard a witness's immunized testimony would be patently inconsistent with the reasoning and tenor of *Kastigar*. The Court explicitly recognized that where there is a strong probability that a defendant's fifth amendment privilege may have been abridged by a grand jury, courts are duty-bound to examine the evidence on which the indictment rests to ensure that no such constitutional violation occurred. 406 U.S. at 460–62, 92 S.Ct. at 1664–65.

after the defendant, identified the defendant as a frequent source of cocaine. The grand jury returned an indictment charging the defendant with drug-related offenses and perjury. *Id.* at 728–29.

Invoking its supervisory power, the Ninth Circuit held that the defendant in such a situation is entitled to an evidentiary hearing at which the government has the duty to establish the independent sources upon which the indictment rested. *Id.* at 733. The court reasoned that a compulsory evidentiary hearing, at which defendant's counsel had an opportunity to examine and contest the government's evidence, will best advance the considerations which caused the court to exercise its supervisory powers: it would effectively deter prosecutorial misconduct, *id.* at 733, and would protect the integrity of the judicial process by providing courts with a reasonable opportunity to "satisfy ourselves that prosecutors truly relied upon independent sources." *Id.*

### C.

■ We agree with the Ninth Circuit that the practice of securing an indictment from the same grand jury which heard a witness's immunized testimony does not in itself constitute a violation of the fifth amendment privilege against self-incrimination. *See Zielezinski,* 740 F.2d at 729. *Kastigar* held that a witness who provides immunized testimony to a grand jury can claim no violation of the fifth amendment privilege against self-incrimination unless he can demonstrate that a grand jury subsequently indicted him on the basis of evidence not wholly independent of the compelled testimony. 406 U.S. at 459–61, 92 S.Ct. at 1664–65. Although *Kastigar* clearly contemplated that the indicting grand

jury would be different from the grand jury which heard the testimony,[7] there is nothing in the opinion to indicate that the scope of the self-incrimination provision or the protections of the use immunity statute would change where the compelling and indicting grand juries are one and the same. It may prove more difficult to *identify* a constitutional violation where only one grand jury has acted, *see Hinton,* 543 F.2d at 1008–10, but the *inquiry* remains the same.

■ Moreover, we agree with the Ninth Circuit that we need not invoke our supervisory powers to absolutely bar the practice. We cannot accept the *Hinton* court's sweeping ·conclusion that in all cases an evidentiary hearing "to ascertain whether the immunized testimony was improperly used * * * would not suffice." 543 F.2d at 1010–11. In some cases, we are confident that an evidentiary hearing will permit the district court to determine whether the indictment rests wholly on independent evidence. This may be the case, for example, where the witness' immunized testimony is relatively brief, or where events before or after the witness testifies are undeniably the source for the evidence presented to the grand jury. *Cf. United States v. Lipkis,* 770 F.2d 1447, 1451 (9th Cir.1985) (*Zielezinski* does not require district court to hold evidentiary hearing where defendant concedes that only minimal differences exist between his nonimmunized testimony, the alleged basis for the indictment, and his later immunized testimony before the same grand jury). In some cases, however, perhaps because of the length of the immunized testimony or the nature of the disclosures, even if facially exculpatory, or the manner in which the witness denies the

---

**7.** *Kastigar* did not itself involve a subsequent indictment before a different grand jury. The Court reviewed a contempt order imposed by the district court on the petitioners when they refused to answer the grand jury's questions after they had been immunized. 406 U.S. at 442, 92 S.Ct. at 1655. However, in discussing the burden imposed on the prosecuting authorities to demonstrate an independent source, the Court relied heavily on *Murphy v. Waterfront*

*Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). In *Murphy,* the Court held that the fifth amendment privilege against self-incrimination protects a witness who is compelled to give testimony in one jurisdiction against the incriminating use of the testimony by a different jurisdiction, *id* at 456–57, 92 S.Ct. at 1662–63; thus more than one grand jury necessarily was involved.

charges, it may be impossible for the prosecution to meet its "heavy burden" of proving a wholly independent source. In such cases, the district court may conclude that it is simply unreasonable to believe that the grand jury did not use, even in a subtle or subconscious way, any of the immunized testimony. *Hinton* itself is a good example of such a case; the immunized witness provided over 200 pages of testimony after another witness had provided substantial incriminating evidence against her, thus suggesting that the government did not have enough inculpatory evidence against her, and needed to have her face the grand jury before it could secure the indictment. *See id.* at 1009.

■ Therefore, we believe it is appropriate under these circumstances to invoke our supervisory powers [8] and require the district court to hold an evidentiary hearing. Indictments which rest upon evidence which is directly or indirectly the product of compelled testimony are unconstitutional. *See Kastigar,* 406 U.S. at 441, 92 S.Ct. at 1653. As both the Second and Ninth Circuits have recognized, although to differing degrees, the inquiry into the direct or derivative use of immunized testimony is severely complicated where everything was done before one grand jury. It is quite likely that the immunized testimony was taken into account in some conscious or subconscious way; the methods and opportunities for identifying improper use of compelled testimony are correspondingly fewer and decidedly "impractical and unpalatable." *See Hinton,* 543 F.2d at 1010. Requiring the district court to hold an evidentiary hearing at which the government, confronted by ·defense counsel, must affirmatively demonstrate the independent source of the evidence upon which the indictment is based, will provide the defend-

ant with the only meaningful method and opportunity to prove a violation of his fifth amendment privilege.

Additionally, requiring an evidentiary hearing will help deter prosecutorial misconduct. *See Zielezinski,* 740 F.2d at 733. In exchange for the ability to compel a witness's testimony, the prosecution forgoes the use of that testimony in any form. 18 U.S.C. § 6002. Asking a grand jury to indict an immunized witness affords the prosecution the opportunity to take advantage of the "subtle ways in which * * * compelled testimony may disadvantage a witness," *Kastigar,* 406 U.S. at 459, 92 S.Ct. at 1664. Although the prosecutor in good faith may not intend for the grand jury to take account of the immunized testimony when seeking an indictment, that is an obvious, considerable risk. Furthermore, even if a given grand jury is able to ignore the previous immunized interrogation and indict the witness on wholly independent evidence, the process appears tainted. *See Zielezinski,* 740 F.2d at 733. Although in all circumstances it may not wholly purge the taint, an evidentiary hearing requirement, together with the heavy burden of proof imposed on the government, will suffice to insure that *Kastigar* has been respected in theory and in fact.

Finally, an evidentiary hearing requirement will protect the integrity of the judicial process. This requirement should expose convictions obtained from tainted indictments, or from indictments which bear the unmistakable signs of prosecutorial impropriety. Any such convictions cannot be tolerated. *See Zielezinski,* 740 F.2d at 733.

We believe, therefore, that an evidentiary hearing is warranted to ensure that the grand jury did not improperly employ a witness's prior immunized testimony.

---

**8.** Courts of appeals may, under their supervisory powers over the administration of justice, establish procedural rules which are more exacting than those required by the Constitution or congressional fiat. *See United States v. Hastings,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983); *United States v. Gonsalves,* 691 F.2d 1310, 1315–16 (9th Cir.1982). The use of this power is animated by notions of fair

play, *Gonsalves,* 691 F.2d at 1316, and the just enforcement of the criminal laws, *United States v. Payner,* 447 U.S. 727, 735 n. 7, 100 S.Ct. 2439, 2446 n. 7, 65 L.Ed.2d 468 (1980). A court's supervisory power is invoked to affect three purposes: to implement a remedy for violation of recognized rights, to preserve judicial integrity, and to deter illegal conduct. *Hastings,* 461 U.S. at 505, 103 S.Ct. at 1978.

Forcing the government to come forward with evidence, and subjecting this proof to adversarial examination and criticism, will in some cases be sufficient to enable the district court to conclude that the indictment rests on *wholly* independent evidence. If the government is unable to completely satisfy the district court, the indictment must be quashed. *See Kastigar,* 406 U.S. 441, 92 S.Ct. at 1653.

Because the district court did not hold an evidentiary hearing in this case to determine if Garrett's indictment rested on evidence which was in any way the product of his immunized testimony, we remand.

## II.

Garrett's second contention is that the indictment must be dismissed because the government failed to fully comply with the district court's pre-trial order granting his motion for a bill of particulars, and thereby prejudiced his ability to present an alibi defense.

The indictment charged Garrett with conspiring with Church and Cooper to distribute cocaine "[o]n or about April, 1983," Record at 1, and specified four overt acts, all of which concerned the sale of cocaine by Church and Cooper to Garrett. Before trial, Garrett filed a motion for a bill of particulars seeking, among other information, the exact dates he allegedly entered the conspiracy to distribute narcotics and allegedly met with Church to purchase narcotics, and the exact date and location of each overt act alleged in the indictment. The district court entered an order granting these portions of the bill of particulars, "limited, of course, to the extent of the government's knowledge of the particulars. To these listed particulars, the government is compelled to respond as best it can." *United States v. Garrett,* No. 84–50027–01 (W.D. Ark. Feb. 19, 1985). The government's response to each request for specific dates was that it did not know the exact dates on which the alleged acts occurred, but that they all occurred after April 8, 1983.

At trial, Church and Cooper testified to the approximate date they sold Garrett cocaine, and the dates he paid installments toward the purchase price. Both testified that the sale of cocaine took place in mid to late April, and that Garrett continued to make payments into May. Garrett moved to dismiss the indictment, contending that the government—which had in its possession for some time prior to trial the statements of Church and Cooper in which they recited these approximate dates—had purposefully withheld this information, which prejudiced his ability to present an alibi defense. The district court denied the motion.

■ The primary purposes of a bill of particulars are to inform the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial. *United States v. Matlock,* 675 F.2d 981, 986 (8th Cir.1982); *United States v. Miller,* 543 F.2d 1221, 1224 (8th Cir.1976), *cert. denied,* 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561 (1977). The district court, in its discretion, may order the government to provide requested additional detail where the particulars set out in the indictment fail sufficiently to apprise the defendant of the charges to enable him to prepare a defense. *United States v. Hill,* 589 F.2d 1344, 1351–52 (8th Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); *United States v. Miller,* 543 F.2d 1221, 1224 (8th Cir.1976), *cert. denied,* 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561 (1977).

■ Assuming that the government failed to fully comply with the district court's order, Garrett has made no showing that prejudice resulted. *See United States v. Cole,* 453 F.2d 902, 905 (8th Cir.), *cert. denied,* 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *see also United States v. Fogelman,* 586 F.2d 337, 340–41 (5th Cir.1978); *Pierce v. United States,* 414 F.2d 163, 169 (5th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). The testimony as to the dates was within the time frame suggested by the government's response to the motion for

bill of particulars. Garrett's only witness, Wayne Roenigk, testified that he and Garrett left the state of Arkansas approximately April 10, 1983 and did not return until May. Thus, Garrett presented an alibi defense for the critical periods, and can claim no surprise nor prejudice.[9]

### III.

Garrett's final contention is that the district court improperly limited his cross-examination of unindicted co-conspirator Church.

The district court limited Garrett's cross-examination of Church in two ways. First, the district court refused to permit Garrett to question Church using the volumes of the United States Code to demonstrate to the jury the number and variety of federal crimes Church had violated, and for which he would not be charged. Second, the court barred Garrett from inquiring of Church whether a particular female companion had ever accompanied him on trips to other cities to sell narcotics, presumably to show additional bias in Church's testimony.

The trial court has broad discretion in determining the relevancy of evidence, *United States v. Wallace*, 722 F.2d 415, 416 (8th Cir.1983); *United States v. Eckmann*, 656 F.2d 308, 312 (8th Cir.1981), and in setting the limits on cross-examination. *Wallace*, 722 F.2d at 416; *United States v. Brown*, 482 F.2d 1226, 1229 (8th Cir.1973). The trial court's decision limiting the scope of cross-examination will be reversed only if it amounts to an abuse of discretion. *Wallace*, 722 F.2d at 417; *Brown*, 482 F.2d at 1229.

 Garrett was entitled to attempt to demonstrate bias and cast doubt on Church's credibility. While counsel should be given wide latitude in cross-examination, *Wallace*, 722 F.2d at 416; *United States v. Pfeiffer*, 539 F.2d 668, 671 (8th Cir.1976),

the district court did not abuse its discretion in preventing Garrett from proceeding through the volumes of the United States Code to detail all federal statutes which Church may have violated.

 Nor can we say that the district court abused its discretion in preventing Garrett from inquiring of Church whether a woman, later Church's wife, or any other person, accompanied him on trips to cities outside Arkansas to distribute narcotics. Garrett has failed to demonstrate what relevance this inquiry has to Church's credibility or bias.

We therefore reverse the district court's judgment on the grand jury issue and remand for an evidentiary hearing, and affirm the district court judgment in all other respects.

---

9. Garrett argues that had he more specific notice of the dates of the acts, his alibi witness could have provided additional documentation for those relevant time periods. However, he does not indicate what additional documentation his alibi witness had, or why it could not have been presented at trial. Thus, his allegation is simply too speculative to demonstrate prejudice.