


FILED

Dec 23 2024, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Menashi Cohen,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

December 23, 2024

Court of Appeals Case No.
24A-CR-710

Appeal from the Tippecanoe Superior Court

The Honorable Steven P. Meyer, Judge

Trial Court Cause No.
79D02-2204-F5-75

---

**Opinion by Judge Brown**
Judges Mathias and Kenworthy concur.

**Brown, Judge.**

[1] Menashi Cohen brings an interlocutory appeal of the trial court's denial of his motion to dismiss. We reverse.[1]

**Facts and Procedural History**

[2] At some point, the State began investigating Cohen and his former wife, Fran Cohen, and businesses including CD Land and Deal Zone. On February 8, 2022, the trial court entered an Order Granting Use Immunity which ordered Cohen to answer questions asked of him in a grand jury investigation and provided that, pursuant to Ind. Code § 35-34-2-8, "answers given to any questions asked of [him] during investigation of this cause, and any information derived therefrom, shall not be used against [him] in any criminal proceedings," "however, said Grant of Immunity is not to extend to information volunteered by [Cohen] or which is not a response to a question, and does not extend to any presently uncharged collateral criminal activity, and does not apply to the use of the answers in a prosecution for Perjury under I.C. 35-44-2-1." Appellant's Appendix Volume II at 117.

---

[1] The Appellant's Appendices are not chronologically paginated. Ind. Appellate Rule 51(C) provides that "[e]ach Appendix volume shall be independently and consecutively numbered" and "[a]ll pages of the Appendix volume, including the front page (see Rule 51(E)), shall be consecutively numbered at the bottom starting with numeral one on each volume's front page." We cite the page numbers as they appear consecutively in the PDF of the Appendices. The State also indicates that it "cites the PDF page numbers of each volume." Appellee's Brief at 5 n.1.

[3] During a grand jury hearing on January 27, 2022, the prosecutor stated that "our planning was to get Fran and [Cohen] as targets to testify . . . ." Appellant's Appendix Volume IV at 10. On March 1 and April 14, 2022, Cohen testified during grand jury proceedings. During the April 14, 2022 hearing, while questioning Cohen, the prosecutor stated that Cohen appeared not to be "telling us the truth" and summarized Cohen's behavior as, "you come into this grand jury, you basically claim I don't remember, I don't know, I have no idea what my wife did, I have no idea how she is making half a million dollars a year I know nothing about her business yet you say you're still using the same shady characters to buy stuff from." Appellant's Appendix Volume II at 236-237.[2]

[4] On April 27, 2022, a grand jury indicted Cohen for corrupt business influence as a level 5 felony, four counts of money laundering as level 6 felonies, four counts of theft as level 6 felonies, five counts of tax evasion as level 6 felonies, failure to maintain records as a class A misdemeanor, failure to remit taxes as a level 6 felony, perjury as a level 6 felony, and two counts of conspiracy to commit theft as level 6 felonies.

[5] On August 19, 2022, Cohen filed a motion to dismiss fourteen of the indictments and alleged misjoinder of offenses, failing to state offenses with

---

[2] Cohen's notice of appeal requested transcripts of the May 4, 2022 initial hearing, the May 11, 2022 Hearing on a Motion for Bond Reduction, the November 2, 2022, hearing on the motion to dismiss, the January 4, 2024 hearing on the motion to dismiss, and the February 23, 2024 status hearing. The record contains only portions of the transcripts of the grand jury hearings which were attached to various filings as exhibits.

sufficient certainty, failing to allege requisite elements, and defective grand jury process. On September 19, 2022, the State filed a response. On September 26, 2022, Cohen filed a reply.

[6] On November 2, 2022, the court held a hearing on the motion to dismiss. Cohen's counsel indicated that he had not received any grand jury transcripts. The court took the matter under advisement. On November 2, 2022, the court entered an order indicating that it had conferred with the court reporter who had agreed to complete "preparation of the priority transcripts requested by the State within 30 days." *Id.* at 86. On December 7, 2022, the parties filed a Stipulation of Parties Regarding Grand Jury Transcripts which was signed by the trial court and which stated that grand jury proceedings are ordinarily confidential but the State agreed to disclose copies of certain portions of the transcripts.

[7] On September 15, 2023, Cohen filed a "Second Motion to Dismiss & For *Kastigar* Hearing" and a memorandum. *Id.* at 92 (capitalization omitted). Cohen argued that the appearance of impropriety had been raised because the same grand jury which heard his immunized testimony also issued the indictments against him. He asserted that the State could make no showing that the evidence considered by the grand jury in issuing its indictments was independent of the immunized testimony given by him twice in front of the same grand jury. He also argued that the trial court "should hold a hearing for the State to present evidence supporting any contention that the grand jury had

an independent source of information upon which it issued the indictments." *Id.* at 99 (citing *State v. Peters*, 637 N.E.2d 145 (Ind. Ct. App. 1994)).

[8]     On September 25, 2023, Cohen filed a "First Motion to Compel Production of Full Grand Jury Transcripts" and requested that the trial court "order production of full transcripts for the December 16, 2021, and January 27, 2022, sittings of the grand jury." Appellant's Appendix Volume III at 2, 5 (capitalization omitted). On December 7, 2023, Cohen filed a "Supplement to First Motion to Compel Production of Full Grand Jury Transcripts" and requested that the court "order production of full transcripts for the December 16, 2021, January 27, 2022, December 1, 2021, and January 6, 2021, sittings of the grand jury transcripts." *Id.* at 41, 43 (capitalization omitted).

[9]     On January 5, 2024, the court held a hearing. Cohen's counsel argued that the immunity extended not only to the use of Cohen's statements but the derivative use of those statements and the prosecutor could not use his statements to indict him in front of the same grand jury. The prosecutor argued that the order granting use immunity did not apply "as far as perjury was concerned or answers that did not respond to a question" and that the questions posed to Cohen did not relate to his criminal involvement and were "mainly focused on questions regarding Fran Cohen's criminal activity . . . ." Transcript Volume II at 90. The parties discussed the transcripts of Cohen's testimony to the grand jury attached to Cohen's second motion to dismiss. The prosecutor asked the court to review the transcripts of Cohen's testimony. The court stated that it would carefully read the transcripts to determine whether there was any taint.

The court asked the prosecutor if she was "done with [her] evidence on . . . the issue of the immunized testimony," and the prosecutor answered affirmatively. *Id.* at 96.

[10] The court then asked the parties for argument "of the first Motion to Dismiss regarding the duplicity and the, all the other issues raised by Defense." *Id.* at 113. The prosecutor called West Lafayette Police Lieutenant Jonathan Eager to present evidence in support of the State's position on the issue "of the specificity of the indictments." *Id.* at 115. The court indicated that the testimony related to the most recent brief filed by Cohen on December 7. After Lieutenant Eager's testimony, the parties discussed the motion to compel, and the court indicated that it would review transcripts to determine whether they should be disclosed. On January 11, 2024, the court entered an order on Cohen's Supplement to First Motion to Compel which found that certain portions of the transcripts should be disclosed.

[11] On February 1, 2024, the court entered a fourteen-page order denying Cohen's motions to dismiss. On February 9, 2024, Cohen filed a Motion to Reconsider Order on Defendant's Second Motion to Dismiss and for *Kastigar* Hearing. Cohen alleged that the State provided certain grand jury transcripts to his counsel on February 7, 2024, and that one of those transcripts provided "crucial information that [he] would have used to support his Second Motion to Dismiss & For *Kastigar* Hearing." Appellant's Appendix Volume IV at 3. He pointed out that the prosecutor told the grand jury on January 27, 2022, that "his plan was to get Dr. Cohen as a 'target' to testify and that the grand jury should 'keep

in mind' that Dr. Cohen was going to be there so that the grand jury can 'ask them all these questions.'" *Id.* at 4. The trial court did not rule on the motion, and it was accordingly deemed denied pursuant to Ind. Trial Rule 53.4(B).[3]

[12] On February 16, 2024, Cohen filed a Motion to Certify February 1, 2024 Order for Interlocutory Appeal. On February 23, 2024, the court held a status hearing and asked Cohen's counsel if he wanted him to rule on the motion to reconsider. Cohen's counsel indicated that it could but the motion had been deemed denied. The court stated that it was going to deny the motion. On February 23, 2024, the trial court certified the February 1, 2024 order for interlocutory appeal and found that the case presented an important question concerning whether Cohen's Fifth Amendment privilege was violated where the same grand jury which heard his immunized testimony also returned charges against him and that an early determination of this question would promote a more orderly disposition of the case. This Court accepted jurisdiction.

---

[3] Ind. Trial Rule 53.4(B) provides:

> Effect of Court's Delay in Ruling upon Repetitive Motion or Motion to Reconsider Ruling on a Motion. Unless such a motion is ruled upon within five (5) days it shall be deemed denied, and entry of service of notice of such denial shall not be required. This Rule 53.4 does not apply to an original motion for judgment on the evidence under Rule 50 after the jury is discharged, to amend or make additional findings of fact under Rule 52(B), an original motion to correct errors under Rule 59, or for correction of relief from judgments under Rule 60 or to the original motions to the extent expressly permitted or expressly designated as extending time under these rules.

## Discussion

Cohen argues that the indictments against him are tainted with impropriety because the same grand jury twice heard his immunized testimony.[4] He also asserts that the State cannot meet its burden to prove the existence of independent evidence supporting the indictments.

The State argues that Cohen's testimony did not admit or prove his participation in guilty behavior. It argues that the record shows that the State had already conducted an extensive investigation of both Deal Zone and CD Land well before Cohen testified. It contends that, "even if there had been some error or unclarity in the trial court's consideration of this issue, the proper remedy would be remand for further proceedings under *Kastigar* rather than dismissal of the indictments." Appellee's Brief at 24.

In reply, Cohen argues that the State incorrectly asserts that he is asking this Court to adopt a *per se* rule that an indictment against an immunized criminal defendant secured by the same grand jury which heard said criminal defendant's immunized testimony must be dismissed. He asserts the State has not pointed to any independent evidence that was presented to the grand jury to support the indictments against him. He also contends that remand for further

---

[4] Cohen "recognizes that the applicable immunity statute does not apply to indictments for perjury, and, accordingly, does not ask this Court to dismiss his indictment for perjury." Appellant's Brief at 10 (citing Ind. Code § 35-37-3-3(b)).

proceedings under *Kastigar* is an improper remedy and would give the State a second chance to indict him.

[16] Generally, it is well established that a trial court's denial of a motion to dismiss is reviewed only for an abuse of discretion. *Study v. State*, 24 N.E.3d 947, 950 (Ind. 2015), *cert. denied*, 577 U.S. 962, 136 S. Ct. 412 (2015). We review a matter of statutory interpretation de novo because it presents a question of law. *Id.*

[17] A trial court may dismiss the indictment or information if the "grand jury proceeding was defective." Ind. Code § 35-34-1-4(a)(3). Ind. Code § 35-34-1-7 provides that "[a]n indictment shall be dismissed upon motion when the grand jury proceeding which resulted in the indictment was conducted in violation of IC 35-34-2." Ind. Code § 35-34-2-8 is titled "Witnesses; use immunity" and provides:

> (a) Upon request by the prosecuting attorney, the court shall grant use immunity to a witness before the grand jury. The court shall instruct the witness by written order or in open court that any evidence the witness gives before the grand jury, or evidence derived from that evidence, may not be used in any criminal prosecution against that witness, unless the evidence is volunteered by the witness or is not responsive to a question by the grand jury or the prosecutor. The court shall then instruct the witness that the witness must answer the questions asked and produce the items requested.
>
> (b) A grant of use immunity does not prohibit the use of evidence the witness gives in a prosecution for perjury under IC 35-44.1-2-1.

(c) If a witness refuses to give evidence after the witness has been granted use immunity, the witness shall be brought before the court and the court shall proceed as if the witness had refused in open court.

[18] In *State v. Peters*, 637 N.E.2d 145 (Ind. Ct. App. 1994), this Court discussed immunized testimony given during a grand jury proceeding. In that case, James Peters was called before a grand jury to testify concerning the alleged illegal use of materials at a city sign shop where he was employed. 637 N.E.2d at 146. Prior to testifying, Peters was granted immunity from prosecution pursuant to Ind. Code § 35-34-2-8. *Id.* The grand jury issued an indictment against Peters charging him with Count I, theft of materials from a sign shop, and Count II, perjury during his grand jury testimony. *Id.* Peters moved to dismiss Count I of the indictment alleging that he could not be indicted by the same grand jury which heard his immunized testimony, and the trial court granted the motion. *Id.*

[19] On appeal, this Court held:

> In *Kastigar v. United States* (1972), 406 U.S. 441, 92 S. Ct. 1653, 32 L.Ed.2d 212, *reh'g denied,* 408 U.S. 931, 92 S. Ct. 2478, 33 L.Ed.2d 345, the United States Supreme Court determined that a grant of use and derivative use immunity is coextensive with the Fifth Amendment privilege against self-incrimination and that a witness granted such immunity may thus be compelled to testify despite his claim of the privilege. Any testimony so compelled may not be used against the witness in *any* respect, thus insuring that the testimony cannot lead to the infliction of criminal penalties on the witness. *Id.* at 453, 92 S. Ct. at 1661. In order to enforce this proscription, once a defendant demonstrates that he

has testified pursuant to a grant of immunity to matters related to the prosecution, the prosecuting authorities "have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Id.* at 460, 92 S. Ct. at 1665, *citing Murphy v. Waterfront Comm'n* (1964), 378 U.S. 52, 84 S. Ct. 1594, 12 L.Ed.2d 678. This burden of proof is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony. *Id.*

On several occasions, the federal courts have examined whether the government met its burden of proof under *Kastigar* where a witness is indicted by a grand jury which earlier heard the witness's immunized testimony on related matters. Although to differing degrees, each court addressing the question has recognized that the inquiry into the direct or derivative use of immunized testimony is severely complicated where everything was done before one grand jury. As the court observed in *United States v. Garrett*, 797 F.2d 656, 664 (8th Cir. 1986), "[i]t is quite likely that the immunized testimony was taken into account in some conscious or subconscious way." Even where the testimony was substantially exculpatory, jurors can draw an inference of guilt from the act or manner of denial, which could not have been drawn had the witness been permitted to assert the Fifth Amendment privilege. *Id.* at 662. In addition, asking a grand jury to indict an immunized witness affords the prosecution the opportunity to take advantage of the "subtle ways in which . . . compelled testimony may disadvantage a witness." *Id.* at 664. Moreover, even if a given grand jury is able to ignore the previous immunized interrogation and indict the witness on wholly independent evidence, the process appears tainted and thus the integrity of the judicial process may be questioned. *Id.*

While sharing the foregoing concerns, the courts have differed in their approach to the problem. In *United States v. Hinton*, 543 F.2d 1002 (2d Cir. 1976), *cert. denied*, 429 U.S. 980, 97 S. Ct. 493, 50 L.Ed.2d 589, the second circuit adopted a *per se* rule of dismissal of any indictment secured from the same grand jury who heard the witness's immunized testimony. The court found "impractical and unpalatable" the prospect of "peering into the grand jurors' minds" or examining them individually, in order to ascertain whether the testimony was improperly used. *Id.* at 1010. Because it would be "virtually impossible" for the government to prove an independent source for the indictment, the court concluded the only effective method of safeguarding the defendant's rights was dismissal of the charges. *Id.* at 1007, 1010; *see also United States v. Tantalo*, 680 F.2d 903 (2d Cir. 1982); *United States v. Anzalone*, 560 F.2d 492 (2d Cir. 1977) *cert. denied*, (1978), 434 U.S. 1015, 98 S. Ct. 732, 54 L.Ed.2d 760.

Other courts have disagreed. In *Garrett,* the court acknowledged that in some cases it may be impossible for the prosecution to meet its "heavy burden" of proving a wholly independent source. 797 F.2d at 663-64. However, in other cases such as where the immunized testimony was relatively brief or where events before or after the testimony are undeniably the source for the evidence presented to the grand jury, the government may be able to establish that the indictment rests upon evidence independent of the immunized testimony. *Id.* at 663. A rule requiring outright dismissal of the indictment is therefore unnecessary. *Id.* Rather, in order to safeguard the defendant's interests, the court required an evidentiary hearing to determine whether the testimony was improperly employed. Such a hearing, at which the government's proof is subjected to adversarial examination and criticism, would also help deter prosecutorial misconduct and protect the integrity of the judicial process. *Id.* at 664-65. Other courts have adopted a similar approach. *See United States v. North*, 910 F.2d 843, 870 (D.C. Cir. 1990), *reh'g granted in part and denied in part*, 920 F.2d 940, *cert. denied*, 500 U.S. 941, 111 S. Ct. 2235, 114 L.Ed.2d 477 (1991) (rejecting Hinton's *per se* rule of

dismissal); *United States v. Zielezinski*, 740 F.2d 727 (9th Cir. 1984), (requiring an evidentiary hearing in case of grand jury's indictment of witness who testified before it pursuant to grant of immunity); *United States v. Lipkis*, 770 F.2d 1447 (9th Cir. 1985), (no hearing required where defendant conceded that only minimal differences existed between his nonimmunized statements, the alleged basis for the indictment, and his later immunized admissions before the same federal agency).

*Id.* at 148-149.

[20] The Court declined to adopt the per se rule of dismissal expressed in *Hinton*. *Id.* at 149. However, the Court cautioned "against the practice of securing an indictment of a witness from the same grand jury which heard the witness's immunized testimony." *Id.* It held that, "[e]ven if proper, the indictment appears tainted." *Id.* (citing *United States v. Zielezinski,* 740 F.2d 727, 733 (9th Cir. 1984)). "If it is necessary to seek indictment of an immunized witness, the better practice is to assemble a new, untainted grand jury and to present to it the independent evidence" and that "[t]he additional effort and time involved in such a practice is well expended in order to avoid the appearance of impropriety." *Id.* The Court concluded:

> Once a defendant demonstrates that he has testified pursuant to a grant of immunity to matters related to the prosecution, the State has the burden of showing an independent, legitimate source for the disputed evidence. *Kastigar,* 406 U.S. at 460, 92 S. Ct. at 1665. Peters made the initial showing because the trial court took judicial notice of the Request for Use Immunity, Order Granting Use Immunity and transcript of Peters' testimony before the grand jury. Peters was later indicted by the same grand jury on a charge related to the matters under its

investigation. Despite this showing, the State presented no evidence that the indictment rested upon evidence independent of Peters' testimony. Instead, the State merely relied on the general denial contained in its response to Peters' motion to dismiss. Because the State failed to meet its burden of proving an independent source for the indictment, Count I of the indictment was properly dismissed.

*Id.* at 149-150 (footnote omitted). *See also Brown v. State*, 725 N.E.2d 823, 826-827 (Ind. 2000) (observing that the State has the burden to show that the evidence is not tainted by establishing that it had an independent source for the disputed evidence and that a *Kastigar* hearing requires more than generalized arguments about the sources of the State's evidence).

[21] The record reveals that the prosecutor informed the grand jury at the January 27, 2022 hearing that Cohen was a target.[5] In the argument section of its brief, the State cites multiple portions of Cohen's testimony before the grand jury. It also cites the testimony of Lieutenant Eager who testified at the January 5, 2024 hearing, which occurred well after the indictments. Our review of Lieutenant Eager's testimony to which the State directs us indicates that Lieutenant Eager failed to specify that he was discussing evidence that was actually presented to the grand jury. We emphasize that the State has the burden to prove that the indictment rested upon evidence independent of Cohen's immunized

---

[5] Ind. Code § 35-34-2-12(a) provides that, "[b]efore the grand jury proceeds to deliberate on whether to issue an indictment, the prosecuting attorney shall, on the record: (1) identify each target of the grand jury proceeding; and (2) identify each offense that each target is alleged to have committed." Ind. Code § 35-34-2-1 provides: "As used in this chapter: 'Target' means a person who has been charged by information for an offense the grand jury is investigating, or who is a subject of the grand jury investigation."

testimony. *See Peters*, 637 N.E.2d at 150 (holding "the State presented no evidence that the indictment rested upon evidence independent of Peters' testimony").

[22] To the extent the State cited to evidence before the grand jury, it asserted that "[t]he grand jury heard other evidence about Fran and Cohen's business dealings, finances and assets," Appellee's Brief at 23 (citing in part Appellant's Appendix Volume II at 32 and Appellant's Appendix Volume IV 103-116, 121-128), and "[t]he record shows that the State had already conducted an extensive investigation of both Deal Zone and CD Land well before Cohen testified." Appellee's Brief at 24 (citing in part Appellant's Appendix Volume II at 9, 19, 57, 78-80, 85, 106, 120, 126, 133, 144, 149). An examination of a number of the pages cited by the State indicates that the documents were not presented to the grand jury.[6] We cannot say that the remaining pages cited by the State, which include portions of transcripts of the February 7 and March 1, 2022 hearings constitute independent evidence. Indeed, pages 120, 126, 133, 144, and 149 of Appellant's Appendix Volume II include the testimony of Cohen during the March 1, 2022 hearing.[7]

---

[6] Page 32 of Appellant's Appendix Volume II is a page of the February 1, 2024 order denying Cohen's motions to dismiss. Pages 9 and 19 contain pages of the chronological case summary. Page 57 consists of the April 27, 2022 indictment for tax invasion as a level 6 felony. Pages 78 through 80 consist of portions of the State's September 19, 2022 Response to Motion to Dismiss. Page 85 consists of the certificate of service for Cohen's September 26, 2022 Reply in Support of Motion to Dismiss 14 Indictments.

[7] To the extent the State cited "App. Vol. IV 103-16, 121-128," Appellee's Brief at 23, we note that Appellant's Appendix Volume IV contains only thirty-four pages. To the extent the citation of Volume IV

In light of *Peters* and its caution against the practice of securing an indictment of a witness from the same grand jury which heard the witness's immunized testimony as well as the State's failure to point to evidence presented to the grand jury indicating that the indictment rested upon evidence independent of Cohen's testimony, we conclude that the indictments, other than the indictment for perjury, should be dismissed.[8]

For the foregoing reasons, we reverse the trial court's denial of Cohen's motion to dismiss.

Reversed.

---

may have been a scrivener's error, we reviewed the relevant pages of Volumes II and III and cannot say that these pages provide independent evidence. Pages 103-116 and 121-128 of Volume II contain a discussion between counsel and the trial court at the February 7, 2022 hearing and Cohen's testimony at the March 1, 2022 hearing. Pages 103-116 of Volume III include testimony of Carole Buchholz at the January 13, 2022 hearing before the grand jury during which she primarily discussed Fran's actions and certain accounts. When a grand juror asked if Cohen had access to any of the accounts, Buchholz answered: "These were pretty much no. No. There were a couple accounts she had in the name of CD Land, but I believe she was the main holder of these accounts." Appellant's Appendix Volume III at 113-114. Pages 121-123 of Volume III contains a transcript of Buchholz's testimony at the January 27, 2022 hearing in which she appeared to focus on Fran's conduct. Pages 124-128 of Volume III include the testimony of Mary Hanaway's testimony at the January 27, 2022 hearing which does not appear to provide independent evidence supporting Cohen's indictments. On appeal, the State does not mention either Buchholz or Hanaway.

[8] We note that Ind. Code § 35-34-1-4(f) provides that "[a]n order of dismissal does not, of itself, constitute a bar to a subsequent prosecution of the same crime or crimes except as otherwise provided by law." *See also generally Serfass v. United States*, 420 U.S. 377, 388-389, 95 S. Ct. 1055, 1062-1063 (1975) (holding that "[i]n the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn," "[i]n a nonjury trial, jeopardy attaches when the court begins to hear evidence," "[u]nder our cases jeopardy had not yet attached when the District Court granted petitioner's motion to dismiss the indictment," and "[p]etitioner was not then, nor has he ever been, 'put to trial before the trier of facts'"); *Majors v. State*, 252 Ind. 672, 677, 251 N.E.2d 571, 574 (1969) ("Further, appellant cannot complain of double jeopardy where, as here, there is a nolle prosequi entered on an indictment and later he is re-indicted on an identical charge providing jeopardy has not attached in the first proceeding. *Johnson v. State*, [252 Ind. 79, 246 N.E.2d 181 (1969)]. *Winters v. State* (192[8]), 200 Ind. 48, 160 N.E. 294. Consequently, since there is no showing that jeopardy attached at the trial on the first indictment, held December 26, 1967, the mere fact that appellant was re-indicted on identical charges at a later date does not of itself constitute double jeopardy.").

Mathias, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Darren A. Craig
Jonathan A. Bont
Cameron S. Trachtman
Frost Brown Todd LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana